USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/6/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
UNITED STATES OF AMERICA :
:
-against- :
:
DUSHON FOSTER, :
:
Defendant. :
----------------------------------------------------------- X

26-CR-0091 (VEC)

MEMORANDUM
OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Dushon Foster, having previously been convicted of a felony, was indicted for illegal possession of a loaded firearm, in violation of 18 U.S.C. § 922(g)(1). *See* Indictment, Dkt. 12 ¶ 1. Defendant moved to suppress evidence of the firearm as well as statements that he made to New York Police Department ("NYPD") officers following his arrest. *See* Def. Mot., Dkt. 19. On July 14, 2026, the Court conducted a hearing ("Hearing") on Defendant's suppression motion. For the following reasons, Defendant's motion to suppress is DENIED.

BACKGROUND

The Indictment arises from a November 10, 2024, incident in which NYPD officers, including Officer Andrew Paulino, detained Defendant in the vicinity of Franklin Avenue and East 166th Street in the Bronx. *See* Hearing Tr., Dkt. 28 at 6:7–8:21. The NYPD officers saw Defendant's gray, four-door Dodge sedan (the "Vehicle"), which has dark, tinted windows, parked and blocking the driveway to a private garage, in violation of various New York traffic laws.[1] *Id.* at 7:18–9:10. Having observed the traffic infractions, Officer Paulino stopped his

[1] Operating a vehicle with excessively tinted windows violates New York law. N.Y. Veh. & Traffic Law ("VTL") § 375 (12-a)(b). Likewise, New York law prohibits standing or parking a vehicle in front of a public or private driveway. VTL § 1202(a)(2)(a). In their post-hearing submission, the Government notes that Defendant's vehicle "was parked more than [twelve] inches from the curb," also in violation of New York law. Gov't Suppl. Br., Dkt. 27 at 2–3, 6 (citing VTL § 1203(b)).

vehicle and approached the Vehicle's driver-side door, which was was ajar; Defendant was standing in the open doorway. *See id.* at 11:16–12:18, 17:20–18:17, 19:2–20:6. When Officer Paulino shined his flashlight into the front seat area of the Vehicle, he saw a purple object on the Vehicle's driver-side floor, which he determined to be a firearm. *Id.* at 20:7–22. Defendant was placed under arrest, and Officer Paulino removed the firearm from the Vehicle. *Id.* At the 42nd Precinct, after orally waiving his *Miranda* rights, Defendant admitted that the firearm recovered from the Vehicle was his, and he acknowledged that the Vehicle was parked in front of a garage that did not belong to him. *See* Gov't Ex. 5, Dkt. 20-5 at 06:29–12:30. Separately, NYPD officers tested the tint on the Vehicle's windows, determining that the rear windows were tinted at fourteen percent, while the front windows were tinted at twenty-eight percent. *See* Gov't Ex. 7, Dkt. 20-7 at 2.

On June 12, 2026, Defendant moved to suppress the gun and his statement, arguing, *inter alia*, that "seizure of the firearm was unconstitutional and must be suppressed" because "[t]here was no warrant to search" Defendant and the NYPD officers had no "reasonable and articulable suspicion" to conduct a "traffic stop." [2] *See* Def. Mot. at 2–4. Defendant also argues that his statements made to NYPD officers following his arrest should be suppressed as fruit of the poisonous tree. *Id.* at 8–9. The Government opposed the motion. *See* Gov't Opp., Dkt. 20. On July 14, 2026, the Court held a Hearing at which only Officer Paulino testified. The Court ordered supplemental briefing on Defendant's suppression motion. *See* Dkt. 26. The

---

[2] The parties both refer to the incident as a "traffic stop." *See* Gov't Suppl. Br. at 2–3, 6–7, 11–12, 15, 17; Def. Suppl. Br., Dkt. 32 at 1–6, 12–14. The Court disagrees that approaching a parked vehicle constitutes a "traffic stop" in either the colloquial or legal sense of the phrase. *See infra* n.3. That said, the characterization ultimately has no bearing on the Court's decision regarding Defendant's suppression motion.

Government's supplemental brief in opposition to Defendant's motion was filed on July 21, 2026, *see* Dkt. 27; Defendant's supplemental brief was submitted on July 28, 2026, *see* Dkt. 32.

## LEGAL STANDARD

"On a motion to suppress evidence in a criminal [case], once [the defendant] has established a basis for his motion, the burden rests on the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers." *United States v. Wyche*, 307 F. Supp. 2d 453, 457 (E.D.N.Y. 2004); *see also United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."); *United States v. Joseph*, 332 F. Supp. 2d 571, 574 (S.D.N.Y. 2004) ("[B]oth the Supreme Court and Second Circuit have held that there are situations where the burden of persuasion at a suppression hearing can shift to the Government to prove, by a preponderance of the evidence, that the proffered evidence is valid.").

## DISCUSSION

The first component of Defendant's argument is that Officer Paulino lacked a "reasonable and articulable suspicion" to conduct (what the parties refer to as) a "traffic stop."[3] *See* Def.

---

[3] Neither the parties nor the Court dispute that a traffic stop is a seizure subject to the parameters of the Fourth Amendment, and without probable cause or reasonable suspicion based on objective facts, a traffic stop violates the Constitution. *See, e.g.*, *United States v. Murphy*, 778 F. Supp. 2d 237, 255 (2011) (citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)). Both New York and federal courts recognize, however, that the right of police officers to stop a moving vehicle is distinct from their right to approach the occupants of a parked vehicle. *See, e.g.*, *People v. Witt*, 129 A.D.3d 1449, 1450 (4th Dep't 2015) (citing *People v. Spencer*, 84 N.Y.2d 749, 753 (1995)); *United States v. Balkissoon*, 579 F. Supp. 3d 367, 370–71 (E.D.N.Y. 2022) ("The police require[] no threshold of suspicion at all to approach [a] parked car."). In short: a police officer may approach a parked car without reasonable suspicion if the officer has any credible basis for doing so—or no reason at all. *Balkissoon*, 579 F. Supp. 3d at 370–71; *see also Pane v. Gramaglia*, 509 F. App'x 101, 103 n.1 (2d Cir. 2013) (summary order) (noting that New York courts have "held that a police officer may approach a parked car without reasonable suspicion . . . if the officer has an objectively credible reason for doing so").

For purposes of Defendant's suppression motion, the Court assumes, without deciding, that the incident leading to Defendant's arrest constituted a "traffic stop" and is thus subject to the heightened "reasonable suspicion" standard. To the extent the incident was not a traffic stop, however, the only live issue is whether the seizure of the firearm was lawful as a plain view seizure. *See infra* pp. 6–7. Under either analytical framework, the Court's conclusion would be the same.

Mot. at 2–3. The Government contends that approaching the Vehicle was legally permissible because the officers had a "reasonable suspicion that [Defendant] had violated multiple provisions of" New York's traffic code, including VTL § 375 (12-a)(b), which prohibits motorists from operating a vehicle with excessively tinted windows, and VTL § 1202(a)(2)(a), which prohibits standing or parking a vehicle in front of a public or private driveway. Gov't Opp. at 4–9.

On this point, the Government is plainly correct. It is well established that operating a vehicle with excessively tinted windows provides probable cause for an officer to make a traffic stop. *See* Gov't Opp. at 4–7 (collecting cases). Defendant's assertion that the officers lacked a factual basis to support their suspicion that the tinted windows violated New York's traffic laws is contradicted by Officer Paulino's testimony, in which he stated that he observed the Vehicle with "excessively tinted windows"; that observation (plus the fact that the Vehicle was blocking a driveway, *see* Hearing Tr. at 16:20–18:10) led him to approach Defendant, *see id.* at 9:2–3; *see also id.* at 12:15–14:14 (Officer Paulino discussing his automobile crime training course and experience identifying vehicles with windows tints in violation of New York law). An officer need not justify suspicion of overly tinted windows with scientific exactitude—"[a]ll that is required to stop a vehicle constitutionally is 'an objectively reasonable belief or suspicion of violation, supported by articulable facts.'" Gov't Opp. at 7 (quoting *United States v. Odom*, No. 03-CR-1201 (SCR), 2004 WL 1179309, at *3 (S.D.N.Y. Apr. 30, 2004)). A reasonable suspicion based on observation and training is routinely accepted as sufficient to justify a traffic stop. *See, e.g.*, *Flowers v. Rustand*, No. 11 Civ. 1801 (BMC), 2012 WL 4567596, at *1 (E.D.N.Y. Oct. 1, 2012) (noting that "[a] human being, a police officer, is not a 'tint-o-meter'" and concluding that an "[officer] must be allowed the ability to make a reasonable judgment call

in concluding that the tinted windows were sufficient to warrant a stop under VTL § 375”); *Holeman v. City of New London*, 425 F.3d 184, 191 n.2 (2d Cir. 2005) (“The tinted windows alone would justify the stop if they were so dark that an officer, acting reasonably, would have suspected that there was a traffic violation.”); *United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir. 2000) (“We don’t call upon the officers to be scientists or carry around and use burdensome equipment to measure light transmittance[.]”); *People v. Bacquie*, 154 A.D.3d 648, 649 (2d Dep’t 2017) (noting that officer who had not been “train[ed] regarding tinted windows” but “had experience in th[e] area, having made thousands of stops and written hundreds of summonses for illegally tinted windows,” was sufficiently qualified to stop a vehicle “due to an apparent violation of [VTL] § 375”).

Defendant asserts that “[t]he Government’s tint theory remains inadequate” because “the tintometer test occurred only after the arrest and inventory process at the precinct,” and “[p]ost-stop testing cannot retroactively create reasonable suspicion that did not exist at the roadside.” Def. Suppl. Br. at 4. This argument completely misses the point; the *post hoc* tintometer test confirmed Officer Paulino’s well-founded suspicion that the Vehicle’s windows were tinted beyond the legal limits. Indeed, the tintometer indicated that Defendant’s front and back windows allowed only twenty-eight percent and fourteen percent of visible light to pass through, respectively—far less than the law requires; the law requires window tints to allow at least *seventy* percent of visible light to pass. In layman’s terms: Defendant’s windows were significantly more tinted than what is statutorily permitted. These facts tend to corroborate Officer Paulino’s testimony that he concluded, based on observation alone, that Defendant’s window tints violated New York’s traffic laws.[4] And in all events, the Government offered a

[4] Defendant also argues that, because the vehicle was parked, it was not being “operated” under New York’s traffic laws, and thus Defendant was not technically violating any provision of the traffic code by merely sitting in a

valid alternative basis to justify the traffic stop: the fact that Defendant was clearly parked in front of a private garage, in violation of VTL § 1202(a)(2)(a).[5] Gov't Opp. at 9.

Because either of these infractions gives rise to reasonable suspicion justifying a traffic stop, the critical question is whether the firearm that was seized from the Vehicle was in "plain view." Having heard Officer Paulino's sworn testimony, the Court concludes that the Government has established by a preponderance of the evidence that the firearm was visible to Officer Paulino when he approached the Vehicle. Although his Hearing testimony was a bit muddled, Officer Paulino clearly stated that he saw the firearm's purple handle "underneath the [driver's] seat," and partly "[o]n the floor" of the vehicle. Hearing Tr. at 22:21–23:11. In particular, Officer Paulino testified that "[e]verything [he] observed, [he] observed [from] outside the car." *Id.* at 23:18–24. And while he could not recall exactly how the gun was positioned on the floor, he remembers seeing the firearm's distinct purple handle, which "contrasted brightly when [he] hit it with [his] flashlight" from "less than an inch from the car." *Id.* at 23:18–24:2; *see also id.* at 24:15–23 (Officer Paulino explaining that the purple grip "stood out" to him, as it "contrast[ed] against the dark gray carpet material behind it"). Officer Paulino also stated that there was nothing covering the firearm on the floor of the Vehicle; nothing

car with overly tinted windows. Def. Mot. at 4–5. This argument may actually be more harmful to Defendant's cause than helpful—again, because the Vehicle was parked with the engine off (*i.e.*, not being "operated," per Defendant) when Officer Paulino observed it and approached, there is a very good argument that this was not a traffic stop at all and thus did not require reasonable suspicion whatsoever. *See supra* n.3. In any event, even if the Court assumes that this was a traffic stop, Defendant's position is not compelling. Def. Mot. at 4. He has cited no cases in support of his hyper-textual argument, while the Government has compiled a handful in which tinted windows on non-moving vehicles provided justification (at least in part) for a traffic stop. *See* Gov't Opp. at 8 (collecting cases). Perhaps the most on point is *Flowers v. Rustand*, an Eastern District case in which an officer "saw a parked car with tinted windows," "believed the degree of tint violated" New York's traffic laws, directed that the driver exit the vehicle, and arrested the driver after seeing drugs through the vehicle's open door. 2012 WL 4567596, at *3.

[5] Because either of the two justifications outlined in the Government's original briefing would be sufficient to warrant a traffic stop, the Court will not address the Government's third, *post hoc* justification (that the Vehicle was parked more than twelve inches from the curb), nor Defendant's argument that the tertiary rationale was not timely presented. Def. Suppl. Br. at 5–6.

blocking his view of the firearm as he approached the Vehicle; and that he did not have to move anything in the Vehicle to see the firearm from his vantage outside. *Id.* at 24:3–14.

The Court finds Officer Paulino's testimony to be credible. His testimony comports with the other evidence that the Court has reviewed—namely, Office Paulino's body-worn camera footage, which shows him reaching immediately into the Vehicle's cab to retrieve the firearm after Defendant was moved aside. *See* Dkt. 20-2 at 0:58–1:10. This is, as the Government notes, "precisely what" the Court "would expect an officer to do after observing a dangerous weapon within arm's reach of an unsecured suspect during a traffic stop." Gov't Suppl. Br. at 11. There is nothing in Defendant's submissions to persuade the Court that Officer Paulino's narrative should be rejected.[6]

In sum, the Government has established, by a preponderance of the evidence, that the seizure of the firearm in Defendant's vehicle was lawful. Furthermore, because the Government has established that the gun was in plain view, it has likewise established that the officers had a "reasonable suspicion of criminal activity" justifying Defendant's arrest. As such, there is no basis to suppress Defendant's *Mirandized* statements, made after the lawful arrest.

## CONCLUSION

For the reasons stated herein, Defendant's motion to suppress is DENIED. The Clerk of Court is respectfully directed to close the open motions at Dkts. 19, 24, and 32.

---

[6] Defendant asserts that the Government's "new submission gives that Court additional reasons to reject [its] reconstruction" of Officer Paulino's stated timeline. Def. Suppl. Br. at 7. Defendant takes issue with Officer Paulino's apparent inability specifically to discern that the "purple object" on the floorboard was a firearm until he was very near the Vehicle, noting that Officer Paulino's Hearing testimony "suggests a progressive realization as he moved closer [to the Vehicle], not an immediate exterior observation of a gun plainly visible before intrusion." *Id.* at 7–8. The fact that Officer Paulino did not identify the purple object as a weapon until he was very close to the Vehicle is beside the point; the only issue from a "plain view" seizure perspective is whether the officer had identified the object as a gun before he reached into the vehicle. Office Paulino testified credibly that he had.

It is further ORDERED that the parties' new deadline to file motions *in limine*, proposed *voir dire* questions, and requests to charge is **Monday, August 17, 2026**. The deadline to respond to the motions *in limine* is **Monday, August 24, 2026**. Trial in this matter will begin on **Monday, September 28, 2026, at 10:00 A.M.**, in Courtroom **20C** of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.

**SO ORDERED.**

**Date: August 6, 2026**
**New York, NY**

**VALERIE CAPRONI**
**United States District Judge**